UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEREZ HOLDINGS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TARPON BAY PARTNERS, LLC; SOUTHRIDGE ADVISORS II, LLC; and STEPHEN M. HICKS,<br><br>Defendants. | No. 2:17-cv-00029-TLN-DB<br><br>**ORDER** |

This matter is before the Court on Defendants Tarpon Bay Partners, LLC ("Tarpon") and Southridge Advisors II, LLC's ("Southridge") motion to transfer venue ("Motion to Transfer"). (ECF No. 16.) Tarpon, Southridge, and Stephen M. Hicks will be referred to collectively as "Defendants" throughout this Order.[1] Plaintiff Zerez Holdings Corporation, formerly known as Definitive Rest Mattress Company ("Plaintiff"), opposes this motion. (ECF No. 19.) The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, the

---

[1] Also pending before the Court is Defendants' motion to dismiss. (ECF No. 15.) Because the Court concludes the instant action ought to be transferred to another federal district court, the Court does not address the merits of this motion.
  Additionally, the Court observes that Defendant Hicks is one of the movants in connection with the motion to dismiss, but he is not identified as such for the instant motion, despite being represented by the same counsel as the other Defendants. No reason is offered for this. In any event, the Court will treat Defendant Hicks as not opposing the instant motion as he did not file an opposition within the time period required by Local Rule 230(c). The Court defines "Defendants" to include Defendant Hicks for convenience.

1

Motion to Tranfer is GRANTED.

**I.     INTRODUCTION**

"[T]wo essentially similar federal actions in separate fora should not continue in parallel fashion; only one should go forward." *Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998). Doing otherwise "plac[es] an unnecessary burden on the federal judiciary" and risks "the embarrassment of conflicting judgments." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979). To avoid these problems, "a discretionary doctrine" — "the doctrine of federal comity" — has arisen. *See id.* at 749–50. Seemingly beginning with the *Church of Scientology* case, this doctrine has been referred to in this Circuit as the "'first to file' rule." *See id.* at 750. This is because, "[i]n its classic formulation, the comity doctrine permits a district court to decline jurisdiction over a matter if a complaint has already been filed in another district." *Id.* at 749. However, the Ninth Circuit has made clear that "there is no rigid or inflexible rule for determining priority of cases pending in federal courts involving the same subject matter." *Id.* at 750 (internal alteration omitted). Rather, this "involves determinations concerning wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, and . . . an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (internal quotation marks and alterations omitted).

To avoid confusion the Court will refer to the doctrine of federal comity as the "first-to-file rule" for the remainder of this Order. The Court agrees with the parties that the first-to-file rule applies to the instant action. While Defendants have offered other bases in support of their Motion to Transfer, the Court concludes that the instant motion is best resolved by that rule. Before explaining why the Court reaches the conclusion that this case should be transferred to the United States District Court for the District of Connecticut ("District of Connecticut"), the Court will briefly set out the first-to-file rule in more detail, along with the factual and procedural background to the extent necessary to inform this analysis.

///

## II.     FIRST-TO-FILE RULE

Having already discussed the purposes the first-to-file rule is intended to serve, the Court will turn directly to how courts go about determining whether it applies. This will be followed by a discussion of how the first-to-file rule operates once a court determines that it does apply. "Courts analyze three factors to determine the applicability of the first-to-file rule: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1381 (S.D. Cal. 2014); *see also Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (describing these as the "three threshold factors"). "Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies." *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995).

With respect to the first threshold factor, "[i]n determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). With respect to the second threshold factor, "[c]ourts have held that the first-to-file rule *does not require* strict identity of the parties, but rather *substantial similarity*." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013) (emphasis retained) (internal quotation marks omitted). "The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008); *Pac. Coast Breaker, Inc. v. Connecticut Elec., Inc.*, No. Civ. 10-3134 KJM EFB, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) ("That similarity, not identity, of parties is the relevant consideration prevents a litigant from adding a party simply to defeat application of the first to file doctrine."). With respect to the third threshold factor, again, "[c]ourts have held that the issues in the two actions must be *substantially similar*, rather than identical." *Wallerstein*, 967 F. Supp. 2d at 1296 (emphasis retained). "To determine whether two suits involve substantially similar issues, [a court] look[s] at whether there is substantial overlap

between the two suits." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240–41 (9th Cir. 2015) (internal quotation marks omitted).

Where the three threshold factors are met, "[n]ormally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc.*, 678 F.2d at 95. The Ninth Circuit has "emphasize[d]" this outcome "normally serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of California*, 611 F.2d at 750. "Under the doctrine, a district court may transfer, stay or dismiss the second action if it determines that it would be in the interest of judicial economy and convenience of the parties." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).

However, as noted above, "[e]ven if the threshold factors of the first to file rule are met, '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems.'" *Z-Line Designs, Inc.*, 218 F.R.D. at 665 (quoting *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 627–28 (9th Cir. 1991)). It bears repeating what "[t]he Supreme Court has emphasized" — resolving the problems of concurrent jurisdiction by federal district courts over substantially similar actions requires giving "an ample degree of discretion . . . to the lower courts." *Pacesetter Sys., Inc.*, 678 F.2d at 95 (quoting *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84 (1952)). Simply put, a district court judge, in exercise of this discretion may "rely on equitable grounds . . . to determine whether to depart from the first to file rule." *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006) (original quotation marks removed). "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade, Inc.*, 946 F.2d at 628 (internal citations omitted). "Generally, a suit is anticipatory when the plaintiff files suit upon receipt of specific, concrete indications that a suit by the defendant is imminent." *Youngevity Int'l, Inc.*, 42 F. Supp. 3d at 1383.

Moreover, even absent inequitable conduct by the plaintiff in the first-filed action, a

"court may also relax the 'first to file' rule if the balance of convenience weighs in favor of the later-filed action." *Ward*, 158 F.R.D. at 648. "The balance of convenience should normally be weighed by the court in the first filed action." *Z-Line Designs, Inc.*, 218 F.R.D. at 665. The standard is essentially the same as it is in the balance of convenience under 28 U.S.C. § 1404(a). *Wallerstein*, 967 F. Supp. 2d at 1293; *Youngevity Int'l, Inc.*, 42 F. Supp. 3d at 1384.

### III. FACTUAL AND PROCEDURAL BACKGROUND

A detailed recitation of the factual allegations in the instant action is not required to resolve the instant motion. Plaintiff argues — and Defendants do not dispute —the three threshold factors of the first-to-file rule are satisfied with respect to the relationship between the instant action and the action pending in the District of Connecticut ("the Connecticut Action"), captioned "Tarpon Bay Partners, LLC v. Zerez Holdings Corp. f/k/a Definitive Rest Mattress Company" with Case No. 3:17-cv-00579.[2] (*Compare* ECF No. 19 at 8–9 *with* ECF No. 26.) However, some discussion of the substance of these two actions is unavoidable. In doing so, the Court emphasizes that it does not reach the merits of the instant action and — in deference to the District of Connecticut — expresses no opinion as to them.

The Court will first discuss facts underlying the parties' disputes, i.e., the facts that gave rise to the instant action and the Connecticut Action (together, "the Actions"), before discussing the sequence of events that immediately preceded the filing of the Actions. According to the First Amended Complaint in the instant action ("FAC"), Plaintiff is a publicly traded Oklahoma corporation with its principal place of business and corporate office in Roseville, California. (ECF No. 8 at ¶ 6.) It is Plaintiff's position "that there is a unity of interest between Tarpon, Southridge and Hicks and that Tarpon and Southridge are alter egos of Hicks." (ECF No. 19 at 8.) Plaintiff's opposition succinctly summarized its view of the facts underlying the parties' disputes as follows:

> [Plaintiff's] claims arise out of the Defendants' solicitation of [Plaintiff] to provide financial advisory services that were allegedly designed to "clean up" [Plaintiff's] balance sheet by converting its

---

[2] As is evident from the caption of the Connecticut Action and the first paragraph of this Order, Plaintiff was formerly known as Definitive Rest Mattress Company. Because this is immaterial to resolving this motion, the Court will make no effort to distinguish what name Plaintiff was operating under at any given time in this Order.

> then-substantial debt into equity, thereby making [Plaintiff] more attractive to future investors. [Plaintiff] alleges that the Defendants fraudulently induced [Plaintiff] to agree to a transaction, pursuant to Section 3(a)(10) of the Securities Act of 1933, by which Tarpon Bay would: (a) purchase [Plaintiff's] debts from its creditors; (b) promptly commence a lawsuit against [Plaintiff] on those obligations; and then (c) seek prompt court approval, at a fairness hearing, to settle its claims against [Plaintiff]. The terms of the "settlement" were to include [Plaintiff] issuing unregistered shares of common stock to Tarpon, in return for which [Plaintiff's] debts would be cancelled. As part of the Section 3(a)(10) transaction, [Plaintiff] was to issue a convertible promissory note to Tarpon for its services.

(ECF No. 19 at 5–6 (internal citations to FAC to omitted).)

The Court will now turn to Defendants' position with respect to the underlying facts. Defendants do not accept Plaintiff's characterization that the financial advisory services or transactions discussed in the preceding paragraph were fraudulent or part of a scheme to defraud Plaintiff.[3] (*See generally* ECF Nos. 16 & 26.) Rather, Defendants contend that the convertible promissory note ("the Convertible Note") referenced above is enforceable against Plaintiff according to its terms. (*See generally* ECF Nos. 16 & 26.)

The parties are in agreement that Exhibit B to the FAC is a true and correct copy of the Convertible Note. (*Compare* ECF No. 8 at ¶ 47 *with* ECF No. 16 at 5.) There is no dispute the Convertible Note was executed by Plaintiff in favor of Tarpon. (*See, e.g.*, ECF No. 8 at ¶ 47.)

The Court now turns to the sequence of events that immediately preceded the filing of the Actions. Defendants allege as follows:

> On October 17, 2016, Tarpon's counsel sent a letter to [Plaintiff (as defined in the Order)] demanding payment of the $25,000 [Convertible] Note. On November 29, 2016, Tarpon sent a Notice of Conversion to Plaintiff demanding conversion of the [Convertible] Note into shares of Plaintiff's common stock. Plaintiff took no action to issue the shares. On December 9, 2016, Tarpon's counsel wrote to Plaintiff demanding the shares and warning that Tarpon would exercise remedies available to it, including filing a lawsuit, if steps were not taken to rectify Plaintiff's breach. Telephone calls were conducted between counsel, and as a result, Tarpon's counsel provided [Plaintiff's] attorney with copies of executed claim purchase agreements. This was on December 29, 2016. In the December 29, 2016 letter,

---
[3] Implicit in their briefing of the instant motion, Defendants do not accept Plaintiff's characterization of the relationship between Tarpon, Southridge, and Hicks. In using the plural "Defendants" in this Order, the Court expresses no opinion as to the legal separateness of Defendants.

> Tarpon's counsel wrote to [Plaintiff's] attorney, "If you fail to rectify this matter by end of business on Thursday December 29, 2016, we will pursue any and all remedies . . . ." On January 6, 2017, [Plaintiff's] attorney (who said she had been on vacation up until then) responded to Tarpon counsel's letter, rejecting the demand for shares of stock from the Convertible Note and concluded by stating, "we will consider the matter closed."
>
> On the same day [Plaintiff] filed the original Complaint in this action. This was just days after being given a deadline of December 29, 2016. However, that Complaint had never been served. Instead, it was merely a "place holder" because before it was served, Plaintiff filed the FAC; and did not serve the FAC until the third week of March, 2017.
>
> Not yet having been served with the complaint or FAC in the instant case, on March 3, 2017, Tarpon filed the Connecticut Action to enforce the Convertible Note and obtain the shares of stock to which it was entitled there under. On April 7, 2017, Plaintiff removed the Connecticut Action to the United States District Court in Connecticut . . . .

(ECF No. 16 at 6–7 (internal citations omitted).) Aside from supplying the date the FAC was filed, Plaintiff's opposition does not quibble with the dates or attempt to controvert the contentions in the immediately preceding block quotations.

The FAC contains the following seven "claims for relief": (1) violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 against all Defendants; (2) breach of implied in fact contract against Tarpon; (3) declaratory relief against Tarpon; (4) breach of fiduciary duty against Southridge and Hicks; (5) usury against Tarpon; (6) rescission based on failure of consideration against Tarpon; and (7) unfair competition in violation of Business & Profession Code § 17200 against all Defendants.

**IV. ANALYSIS**

Before resolving the instant motion under the first-to-file rule, a brief discussion of Plaintiff's alternative bases for transfer is in order, as it will streamline the Court's later analysis.

A. Preliminary Discussion

Defendants argue the Court should enforce the forum-selection clause contained in the Convertible Note under 28 U.S.C. § 1404(a), applying the standard set out in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas* ("*Atlantic Marine*"), 134 S. Ct. 568 (2013). (ECF No. 16 at 9–11.) Section 1404(a) provides as

7

follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In *Atlantic Marine*, the Supreme Court explained that flouting a forum-selection clause "does not render venue in a court 'wrong' or 'improper' within the meaning of 28 § 1406(a) or Rule 12(b)(3) [of the Federal Rules of Civil Procedure]." *Atlantic Marine*, 134 S. Ct. at 579. "Section 1404(a) therefore provides a mechanism for *enforcement* of forum-selection clauses that point to a particular federal district."[4] *Id*. (emphasis added).

*Enforcement* is the key to the teachings of *Atlantic Marine*. There, the Supreme Court identified the error in Fifth Circuit's analysis as follows:

> Although the Court of Appeals correctly identified § 1404(a) as the appropriate provision to *enforce the forum-selection clause* in this case, the Court of Appeals erred in failing to make the adjustments required in a § 1404(a) analysis when the transfer motion is premised on a forum-selection clause. When *the parties have agreed* to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under *extraordinary circumstances unrelated to the convenience* of the parties should a § 1404(a) motion be denied. And no such exceptional factors appear to be present in this case.

*Atlantic Marine*, 134 S. Ct. at 581 (footnote omitted). The forum-selection clause at issue in *Atlantic Marine* provided that all disputes between the parties "shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division." *Id*. at 575. Nevertheless, when a dispute arose between the parties to the contract, the plaintiff filed in the Western District of Texas. *Id*. at 576.

The problem with Defendants' *Atlantic Marine* argument is apparent once the forum-selection clause in the Convertible Note is reviewed. That clause provides as follows:

> This Note shall be governed by and construed in accordance with the laws of the State of Connecticut. Each of the parties consents to the jurisdiction of the state or Federal Courts of the State of Connecticut residing in Fairfield County in connection with any dispute arising under this Note and hereby waives, to the maximum

---

[4] This presupposes the particular federal district court the forum-selection clause identifies is one where the civil action at issue "might have been brought" in the first place. *See* 28 U.S.C. § 1404(a). Plaintiff does not dispute this is the case with respect to the District of Connecticut. (ECF No. 19 at 7.)

8

> extent permitted by law, any objection, including any objection based on *forum non conveniens*, to the bringing of any such proceeding in such jurisdictions.

(ECF No. 8 at 29.) "[C]onsent to jurisdiction . . . does not mean that the same subject matter cannot be litigated in any other court." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). The language employed in the Convertible Note says nothing about the state or federal courts sitting in Fairfield County, Connecticut (the "Connecticut Jurisdictions") having *exclusive jurisdiction*. *See id*. In legal parlance, this forum-selection clause "is permissive rather than mandatory." *Id*. Simply put, the Convertible Note's forum-selection clause, *by its terms*, does not prevent Plaintiff from doing what it did.

Embedded in Defendants' *Atlantic Marine* argument is Defendants' position that Plaintff should not be rewarded for racing to the courthouse in the face of threatened litigation "to preempt the filing that was about to take place in Connecticut" and circumvent the forum-selection clause. (*See* ECF No. 16 at 10.) Essentially, the Defendants ask to be treated as if the Connecticut Action were filed first. *Technically*, it was not filed first. For this reason, the Court thinks this is best addressed under the first-to-file rule, as "courts are *not bound by technicalities*" when "considering issues raised by the [first-to-file rule]." *Church of Scientology of California*, 611 F.2d at 749. Similarly, the Court thinks the parties arguments addressed to § 1404(a) considerations are better addressed within the frame work of the first-to-file rule, as discussed more completely below.

B.     First-to-File Rule: Application

The parties do not dispute that the prerequisites to applying the first to file rule — (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues — are met here. (*Compare* ECF No. 19 at 8–9 *with* ECF No. 26.) Consequently, there is no need to analyze these threshold factors in detail. With respect to the first factor, the chronology of the actions is obvious and warrants no further discussion. With respect to the second factor, the two parties not present in the Connecticut Action (but that are named in the FAC) are ones Plaintiff contends have a "unity of interest" with its sole adversary in the Connecticut Action. (ECF No. 19 at 8.) Consequently, the Court finds the parties are sufficiently similar. *See Pac. Coast*

*Breaker, Inc.*, 2011 WL 2073796, at *3. With respect to the third factor, there is no need to belabor the point — it is plainly satisfied. The Connecticut Action seeks to enforce a Convertible Note that the instant action seeks, among other things, to have rescinded for alleged impropriety by Defendants. In Plaintiff's words, the Actions arise out of the "same nucleus of facts." (ECF No. 19 at 9.) If the Connecticut Action were allowed to run parallel in the District of Connecticut with the instant action proceeding in this Court, wasting judicial resources is unavoidable and the risk of "the embarrassment of conflicting judgments" is immediately obvious. *Church of Scientology of California*, 611 F.2d at 750.

The Court now turns to the question of whether the instant action was an anticipatory filing. Defendants' opening brief squarely levels the charge "that this case is an improper anticipatory filing made to gain an advantage in bad faith, using sharp practices, in violation of the parties' agreement and in anticipation of Tarpon's filing." (ECF No. 16 at 13–14.) Defendants allege specific circumstances surrounding the filing of the instant action they contend qualify the instant action as an "anticipatory filing" within the meaning of the first-to-file rule. (ECF No. 16 at 6, 14.) Noting the flexibility of the first-to-file rule, Defendants argue the circumstances "are the epitome of the special circumstances of an anticipatory filing that indicates that . . . Plaintiff's chosen forum should not be honored where another case is pending in another district." (ECF No. 16 at 14.)

While Plaintiff advocates for the application of the first-to-file rule, Plaintiff offers no response to the contention that the instant action is an anticipatory filing. Indeed, the phrase "anticipatory filing" never appears in Plaintiff's opposition. Moreover, Plaintiff does not contradict Defendants' accusations regarding the sequence of events leading up to and the circumstances surrounding the filing of the instant action. (*Compare* ECF No. 16 at 6:3–26 (quoted in Section III of this Order) *with* ECF No. 19.) Accordingly, the Court finds Plaintiff has conceded that the instant action is an anticipatory filing within the meaning of the first-to-file rule. *See Xoxide, Inc.*, 448 F. Supp. 2d at 1193 (taking the plaintiff's failure to meet the defendant's argument that the action in question was an anticipatory filing as concession that the plaintiff was unable to do so); *see generally Stichting Pensioenfonds ABP v. Countrywide Fin.*

10

*Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.")

Having deemed the instant action to be an anticipatory filing, the Court now turns to the question of how to exercise its discretion to "determin[e the] priority" of the Actions. *Church of Scientology of California*, 611 F.2d at 750. This requires a brief explanation of what underlies the anticipatory filing exception. "Anticipatory suits . . . are viewed with disfavor as examples of forum shopping and gamesmanship." *Xoxide, Inc.*, 448 F. Supp. 2d at 1192. As a number of district courts in this Circuit have acknowledged, "by recognizing this exception to the first-to-file rule, courts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998). Put another way, "[t]he anticipatory suit exception is rooted in a concern that a [would be] plaintiff should not be deprived of its traditional choice of forum because a [would be] defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum." *Inherent.com*, 420 F. Supp. 2d at 1097 (internal quotation mark omitted). Having carefully considered the matter, in exercise of its discretion, the Court will treat the Connecticut Action as first-filed for the remainder of this Order.[5]

With this in mind, the Court proceeds to analyze whether considerations of convenience counsel relaxation of the first-to-file rule. *See Ward*, 158 F.R.D. at 648. In doing so, the Court will look to the standard applied under § 1404(a). *Wallerstein*, 967 F. Supp. 2d at 1293; *Youngevity Int'l, Inc.*, 42 F. Supp. 3d at 1384. However, as the Court has concluded the Connecticut Action should be treated as the first-filed action, the forum-selection clause is of renewed significance. This is because the forum-selection clause, while permissive, provides that each of the parties to the Convertible Note "*waives*, to the maximum extent permitted by law, *any*

---

[5] Obviously, the instant action is not limited to seeking declaratory relief. This is of no moment. Where, as here, the three threshold factors are met, the Court is not restricted from treating the second-filed action as the first-filed action because the anticipatory filer sought other forms of relief. *See Pacesetter Sys., Inc.*, 678 F.2d at 95. The Court's discretion to fashion a flexible remedy is not bound by such technicalities. *Church of Scientology of California*, 611 F.2d at 749. Such a mechanical application would obviously encourage precisely the type of gamesmanship the anticipatory filing exception is meant to discourage.

11

*objection*, including any objection *based on forum non conveniens*, to the bringing of any such proceeding in" the Connecticut Jurisdictions. (ECF No. 8 at 29 (emphasis added).) Thus the clause, while not mandating the suit be brought in the Connecticut Jurisdictions, implicates the teachings of *Atlantic Marine*.

As the Supreme Court explained: "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atlantic Marine*, 134 S. Ct. at 580. That is, "both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard[.]" *Id*. at 580. "In the *typical case not involving a forum-selection clause*, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Id*. at 581 (emphasis added). In such a case, "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*. (quoting § 1404(a)).

However, where a party seeks to enforce to "a valid forum-selection clause," in accordance with its terms, this requires a "district court[] to adjust [its] usual § 1404(a) analysis in three ways":[6]

> First, the *plaintiff's choice of forum merits no weight*. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .
>
> Second, *a court* evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause *should not consider arguments about the parties' private interests*. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court

---

[6] The opposition does not contend that the forum-selection clause in the Convertible Note is invalid. The words "valid," "validity," "invalid," and "invalidity" never appear in the opposition. For the sake of completeness, the Court observes that Plaintiff did offer four sentences, without citation to any authority whatsoever, that it contends render the forum selection clause "meaningless." (ECF No. 19 at 15.) It is plain that these four sentences do nothing of the sort. They neither go toward invalidity nor require further discussion. *See Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001) (explaining that a federal district court is not "required to address perfunctory and undeveloped arguments").

>accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .
>
>As a consequence, *a district court may consider arguments about public-interest factors only*. Because those factors *will rarely defeat a transfer motion*, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.
>
>Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations. . . .

*Id*. at 581–82 (internal citations and certain internal quotation marks omitted).

In light of the foregoing, in looking to see whether convenience counsels relaxation of the first-to-file rule, the Court will limit its analysis to public-interest factors of the type identified by Supreme Court in *Atlantic Marine*. *Atlantic Marine* provided that "[p]ublic may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. at 581 n.6. Plaintiff has identified four public-interest factors. Having carefully reviewed these arguments, along with Defendants' responses in their reply, its readily apparent this is not one of the rare cases where consideration of these factors will win the day for the party flouting the forum-selection clause. Similarly clear, given the poverty of the briefing on these four points a lengthy treatment of them is not in order.

The first argument offered is "the locus of the dispute is in California where the injury is" because "the locus of a tort is the place where the injury takes effect." (ECF No. 19 at 14.) Although it is not clearly stated, this seems to be directed to the local interest in having localized controversies decided at home. Plaintiff is a *publicly traded Oklahoma corporation* with a principal place of business and corporate office in Roseville, California that *filed anticipatory lawsuit* (not limited to torts) in the Eastern District of California *to preempt a Florida limited liability company* — that Plaintiff contends is *beneficially owned by a Connecticut resident* — *from filing a lawsuit* (not sounding in tort). The lawsuit Plaintiff attempted to preempt sought *to*

13

*enforce a convertible promissory note* that provides on its face that it will be "*governed by and construed in accordance with the laws of the State of Connecticut.*" (ECF No. 8 at 29.) The single, conclusory sentence seemingly offered in support of the contention that the parties' disputes are localized in the Eastern District of California is wholly inadequate and requires no further consideration. *See Williams*, 190 F. Supp. 2d at 1114. Consequently, the Court deems this factor neutral.

Plaintiff's second argument on choice of law warrants only brief discussion. The seeming point that Plaintiff is attempting to make is that this Court would be better suited to handle this case *if California's substantive law applies* because this Court more frequently deals with California law than the District of Connecticut. (ECF No. 19 at 14.) In their reply, Defendants contend that "Plaintiff ignores the Connecticut choice of law provision in the [Convertible] Note that would govern all defenses to enforcement of the Note, and the fact that a judge sitting in Connecticut obviously would be more familiar with that law." (ECF No. 26 at 11.) Even assuming for the sake of argument that California's substantive law should be applied, if this moves the needle at all against transfer to the District of Connecticut, it does so only ever so slightly. As the Supreme Court has explained "federal judges *routinely* apply the [substantive] law of a State other than the State in which they sit." *Atlantic Marine*, 134 S.Ct. at 584 (emphasis added).[7] The Court has little doubt that a federal district judge in California is "fully capable of applying" Connecticut law and vice versa. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) (concluding that "that courts in the Central District of California are fully capable of applying New York substantive law").

Plaintiff's third argument is that "court congestion and the relative speed at which [this Court] and the [District of Connecticut] may resolve the case" should be neutral. (ECF No. 19 at 14–15.) Because Defendants did not respond to Plaintiff on this point, the Court will deem this factor neutral. (*See* ECF No. 26.)

---

[7] Nothing in this Order should be read as an endorsement of Plaintiff's choice of law analysis. Moreover, consistent with the teaching of *Atlantic Marine*, the Court concludes the California choice of law rules that this ordinarily applies in diversity cases should not follow this action to the District of Connecticut. *Atlantic Marine*, 134 S.Ct. at 581–82.

14

Plaintiff's fourth argument does not warrant detailed discussion. Without citation to authority, Defendants opening brief offers a two-sentence assertion: Tarpon's filing of an application for a preliminary injunction (the "Application") in the Connecticut Action "weighs heavily" in favor of transfer to the District of Connecticut because Defendants had noticed the hearing for the Motion for Transfer later than the date the District of Connecticut set for a hearing on the Application. (ECF No. 16 at 12.) Although not clearly stated, Plaintiff suggests whatever significance the Application had is diminished (perhaps to nothing) because the Application was denied. (ECF No. 19 at 15.) Defendants' reply musters a single conclusory sentence in reply. (ECF No. 26 at 8.) Because it would not alter the outcome of the instant motion, the Court will assume that the filing of the Application, when taken together with its subsequent denial, neither supports granting or denying the Motion to Transfer.

Simply put, Plaintiff's arguments as to public-interest factors fall well short of demonstrating "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." *Atlantic Marine*, 134 S.Ct. at 575. In light of the teachings of *Atlantic Marine* and the discretion conferred upon this Court by the so-called first-to-file rule, the Court transfers the instant action to the District of Connecticut. Nothing in this Order should be read to limit the District of Connecticut in deciding how to most efficiently address the Actions, e.g., dismissal, consolidation, stay, etc.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer is GRANTED. The instant action is hereby transferred to the United States District Court for the District of Connecticut. The Clerk of the Court shall reflect this on this Court's docket.

IT IS SO ORDERED.

Dated: January 11, 2018

Troy L. Nunley
United States District Judge

15